IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : MAGISTRATE NO. 08-1220-M

v. :

GEORGE GEORGIOU :

### MEMORANDUM ORDER

AND NOW, this 22nd day of September, 2008, after a pretrial detention hearing held on September 19, 2008, and after review of the United States Pretrial Services' report, and the arguments of counsel,[1] it is hereby

### ORDERED

that the Government's Motion for Pretrial Detention is GRANTED for the following reasons:

(1) This court has found probable cause to believe that defendant, George Georgiou, engaged in a stock manipulation scheme in violation of 18 U.S.C. § 371, 15 U.S.C. § 78j(b), 78ff, and 17 C.F.R. § 240.10b5. The evidence gathered by the Government resulted from an undercover operation which lasted approximately one year, during which time incriminating conversations between defendant and a cooperating witness (C.W.) and an undercover F.B.I. agent were recorded. During this time, defendant threatened the C.W. with physical injury if the C.W. failed to go along with the stock manipulation scheme, or otherwise report the scheme to authorities.

(2) Pretrial detention of a criminal defendant should be ordered if, after a hearing upon motion of the Government, a "judicial officer finds that no condition or combination of

---

[1] After the hearing, defense counsel faxed a letter to Chambers, dated September 21, 2008, making additional arguments. The court also has considered the letter.

conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making this determination, the court should consider four factors: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness to any person and the community that would be posed by the person released. 18 U.S.C. § 3142(g).

      (3) With respect to the first factor, defendant is charged with a very serious offense involving a scheme to defraud with potential losses to investors of hundreds of millions of dollars. The Government estimates that if convicted, the advisory guideline sentence would be approximately twenty years imprisonment. Second, the evidence against defendant is very strong. During the year long investigation, defendant made numerous tape-recorded incriminating statements to the undercover agent and the C.W., and instructed the C.W. to use certain methods to avoid detection by law enforcement agents. Based on the evidence presented at the detention hearing, it appears there is a strong likelihood that defendant will be convicted of these serious crimes. Third, regarding the history and characteristics of defendant, defendant is a Canadian citizen and has strong family ties and employment in Canada, but has no ties in the United States. He has no criminal record, although his license to deal in securities in Canada has been revoked because of improper business practices. Last, there is a serious risk of danger to the C.W. should defendant be released. As stated heretofore, defendant threatened the C.W. with physical harm. Among his threats were that the C.W. should "sleep with one eye open," and it would be easier for defendant to "get someone's legs broken in New York than in Canada." Additionally, defendant also has claimed to have ties with organized crime in Canada.

(4) There is no doubt that should defendant be released on bail, he would present a substantial risk of flight and a danger to the C.W. To minimize the risk of flight, defendant's counsel proposes that his client would sign a waiver of extradition form and a personal appearance bond in excess of one million dollars to be co-signed by his wife, his friend, Thomas Bock, a multi-millionaire, and a priest, Father Michael Platanis, who appeared in court. Counsel further proposed that Mr. Bock would post one million dollars via a Letter of Credit as surety, and defendant and his wife would give the Government a second mortgage on their Canadian home in the approximate amount of $700,000. There is already a primary mortgage on the property in the amount of $1.8 million. See Pretrial Services Report at 2. After the hearing, defense counsel also offered that defendant's mother would post $25,000 in cash and the equity in her Canadian home. This proposal does mollify the risk of flight, but in the end it does not reasonably assure the court that the defendant will return to the United States to face these charges. Should he not return, the Government would have to commence extradition proceedings in Canada which may take several years to resolve, and both parties agree that a waiver of extradition may not be enforceable in Canada. While the money offered as surety is ostensibly substantial, the court is not convinced that it would assure the defendant's appearance, given that defendant is a person of very substantial means.

(5) Furthermore, defendant's proposal does not address the serious risk of danger to the C.W. Should the court release defendant to reside in his home in Canada, there would be no mechanism to enforce any court-imposed conditions, such as house arrest or electronic monitoring, which would restrict defendant's ability to carry out his threats to the C.W. There would be no way a United States Pretrial Services officer could effectively monitor the activities

of the defendant in Canada to ensure defendant's compliance with any conditions of release to address the danger posed by defendant to the C.W., as well as the substantial risk of flight. In counsel's letter, dated September 21, 2008, he now proposes, in the alternative, that defendant would be willing to establish a residence in New York should the court not be satisfied with him residing with his family in Canada pending the trial. While establishing a residence in the United States would give United States Pretrial Services the opportunity to monitor defendant's activities to minimize the treats to the C.W., the court is not reasonably assured that defendant will not return to Canada to flee the jurisdiction of the United States. He has absolutely no ties to the United States, his wife and his children are in Canada, and he faces nearly twenty years imprisonment if convicted. In addition, he has the financial resources to flee this country and return home. See Pretrial Services Report at 2.

(6) The court has reviewed the case of U.S. v. Cirillo, 1999 WL 1456536 (3d Cir. July 13, 1999) (non precedential), where the court found that a Canadian citizen indicted on drug conspiracy charges was entitled to pretrial release where he had signed an irrevocable waiver of extradition and had strong Canadian family ties and employment and no criminal record. This case is distinguishable from the facts before this court in that there was no threat to a cooperating witness as in the instant case. It also does not appear that Mr. Cirillo had substantial financial assets, as does Mr. Georgiou, that could be used to evade the jurisdiction of the United States. Furthermore, defense counsel concedes that a waiver of extradition may not be enforceable in Canada, a fact the court in Cirillo did not mention in its opinion.

Therefore, **IT IS ORDERED** that the defendant be committed to the custody of the Attorney General for confinement in a correction facility, separate, to the extent practicable,

from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order to of the Court of the United States, or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

/s/ TJR
THOMAS J. RUETER
CHIEF UNITED STATES MAGISTRATE JUDGE